**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cr-00063-TWP-MJD |
| ) | |
| RONALD FORTSON, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on Defendant Ronald Fortson's ("Mr. Fortson") Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239, (Dkt. 50). Mr. Fortson seeks immediate release and the reduction of his sentence to time served due to the March 2019 death of his minor son's mother. For the reasons explained below, Mr. Fortson's Motion is **granted.**

## I.  BACKGROUND

On December 10, 2018, Mr. Fortson was sentenced to 37 months imprisonment followed by two years of supervised release, after being convicted of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (Dkt. 30.) He is presently incarcerated at the Federal Correctional Institution in Milan, Michigan ("FCI-Milan"). Mr. Fortson's current release date is projected to be July 9, 2021.

On March 7, 2019, Starleana Dollahan, the mother of Mr. Fortson's now fourteen-year-old son R.F., died of a fentanyl/methamphetamine overdose. (Dkt. 51-1.) Mr. Fortson submitted two administrative requests to the warden at FCI-Milan for compassionate release under the First Step Act., based on family circumstances. (Dkt. 51-4.) Those requests were denied by the warden on

August 8, 2019, for failure to provide a death certificate, and on November 20, 2019, for failure to provide documentation that the child's mother "was and still is the only family member caregiver capable of caring for the minor child." (Dkts. 69-2, 69-3.)  On May 30, 2020, Mr. Fortson refiled his request for a reduction in sentence at the government's suggestion. (Dkt. 69-5.)

On February 5, 2020, Mr. Fortson, *pro se*, filed a Motion for sentence reduction with this Court.  The Court appointed Mario Garcia to this case effective February 20, 2020 and counsel filed a memorandum in support of the Motion. (Dkt. 66.) The United States responded on June 10, 2020, (Dkt. 69), and Mr. Fortson filed a reply on June 25, 2020, (Dkt. 74.)

An evidentiary hearing was held on the Motion on July 10, 2020. At the hearing, Mr. Fortson testified on his own behalf and called as a witness Bradley Schwimer, of the Marion County Public Defender Agency.  Mr. Schwimer represents Mr. Fortson in a Child in Need of Services (CHINS) action.

A CHINS petition was filed by the Indiana Department of Child Services ("DCS") on February 19, 2020, under Indiana Cause Number 49D15-2002-JC-000579, alleging that R.F. is a child in need of services.  After Ms. Dollahan's death, R.F. was in the care of one maternal cousin, and then another maternal cousin.  R.F. is presently a ward of the state. The Motion was filed in part because the cousin—having no legal rights over R.F.—is unable to provide him with services such as health insurance.  In addition, the cousin has children of her own and struggled with financially supporting R.F.

There is a bench hearing in the CHINS proceeding scheduled for July 23, 2020 in the Marion Superior Court, Juvenile Division.  If R.F. is determined to be a child in need of services, the Court will order Mr. Fortson to participate in services, which could include drug counseling or family therapy.  However, if Mr. Fortson is still incarcerated at the time of the hearing, he will be

unable to participate in these services. Mr. Fortson's inability to participate in services or otherwise provide care for his son could result in DCS filing for termination of Mr. Fortson's parental rights at a permanency hearing presently scheduled for February 11th, 2021.

If compassionately released, Mr. Fortson would live in La Porte, Indiana, with Anthony McClusky, a longtime family friend who will provide both a home and financial assistance to Mr. Fortson until he is able to obtain employment. Mr. Fortson has been actively seeking employment, and has past work experience in construction, home health care, and food services. Mr. Schwimer testified that, based on his experience, if Mr. Fortson were to be released before the July 23, 2020 CHINS hearing, he would have a better chance of prevailing at the CHINS hearing because the burden is on DCS to show the parent is unfit. Further, even if R.F. was found to need services, reunification with Mr. Fortson, rather than termination of parental rights and adoption, would still be a likely outcome as long as Mr. Fortson participated in the services and maintained employment.

Mr. Fortson testified that he has a good relationship with his son. He is currently unable to speak with him due to the CHINS proceedings, but he speaks to the cousin caring for R.F. on a weekly basis. Neither the cousin nor R.F. has expressed any objection to Mr. Fortson caring for R.F. Mr. Fortson acknowledged that he was $15,000.00 in arrears with his child support, but he testified he had begun paying child support through the court at the time of his arrest and had been informally providing money to Ms. Dollahan. Mr. Fortson acknowledged that caring for a child is a serious responsibility. Mr. Fortson is willing to engage in any services mandated by DCS or probation. While in FCI-Milan he has completed a drug education class. He began a cognitive thinking class, but that program was put on hold due to the COVID-19 pandemic.

At the end of the hearing, the Court announced its intention to grant Mr. Fortson's Motion. Following are the reasons why the Court finds release appropriate in this case.

## II. DISCUSSION

Mr. Fortson moved the Court for immediate release because the death of his minor son's mother is an extraordinary and compelling reason for release. In addition, he argues that he is not a danger to the community and that the sentencing factors in 18 U.S.C. § 3553(a) favor his release. The Government conceded at the hearing that there are extraordinary and compelling reasons for his release but argues in its brief that release is inappropriate because any reduction of Mr. Fortson's sentence would not be consistent with the § 3553(a) factors. (Dkt. 69 at 5.)

18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Mr. Fortson submitted his most recent request for a reduction in sentence to his custodian on May 30, 2020. That request has not been granted, and 30 days have passed since he submitted his request under 18 U.S.C. § 3582(c). The Government concedes that Mr. Fortson has exhausted his administrative remedies. (Dkt. 69.) Accordingly, the Court proceeds to the merits of the Motion.

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied

4

and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3581(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the Bureau of Prisons ("BOP")) may move for compassionate release,[1] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Mr. Fortson is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

---

[1] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended _____ § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 1 Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (First Step Act § 603(b)).

### A. **Extraordinary and Compelling Reasons**

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling." Relevant here is the third reason: "(C) Family Circumstances—(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children."

The mother of Mr. Fortson's minor child died, leaving him in the care of a maternal relatives who are not able to care for him long-term. Although he owed a substantial arrearage in child support, Mr. Fortson has a lifelong paternal relationship with his son. The Court notes that R.F. attended Mr. Fortson's sentencing hearing in 2018. Because of Mr. Fortson's incarceration and inability to participate in services, he could lose parental rights or the plan could be shifted to adoption without his ability to defend. The Court concludes that Mr. Fortson has established "extraordinary and compelling reasons" for his release under subsection (C). The Government concurred that the circumstances described at the hearing and in the briefing fall within the application note for family circumstances, and that the record has been sufficiently developed to show evidence from which the Court can make a rational ruling on compassionate release.

### B. **Danger to Any Other Person or to the Community**

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) is the provision outlining the factors the court must consider in determining whether a defendant should be detained pending trial. In turn, § 3142(g) provides:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Fortson's conviction was based on the following conduct. In February 2018, Mr. Fortson was on probation for possession of a firearm without a license, and the terms of his probation permitted law enforcement officers to search his person and property at any time. (Dkt. 24 at ¶ 6.) During a search of his residence on February 19, 2018, officers discovered an AR-15 rifle under Mr. Fortson's mattress. *Id.* Mr. Fortson told the probation officers that his friend had given him the rifle to hold the previous day. *Id.* at ¶ 7. Mr. Fortson stated that he took the case holding the gun from his friend's car, carried it into his home, and placed it under his mattress. *Id.* The magazine for the firearm was inside the case, but was not attached to the rifle, and the magazine did not contain any ammunition. Mr. Fortson conceded that he was prohibited from possessing any firearm. He alleges that while he was aware the case contained a firearm, he never opened the case. *Id.*

Mr. Fortson's criminal history includes felony convictions in state court for possession of marijuana and being a felon carrying a handgun with a prior conviction. *Id.* at ¶ 9.

The Court is concerned about Mr. Fortson's criminal history, especially his prior conviction for firearm possession. The Court finds, however, that Mr. Fortson's release from incarceration to an extended three-year term of supervised release with the first year on home detention with GPS monitoring would alleviate threats to the safety of his family and the general public. Mr. Fortson has a place to live and financial assistance until he is able to support himself and R.F. Further, the U.S. Probation Office in the Northern District of Indiana, has already inspected Mr. McCluskey's home and has approved it as an appropriate residence. (Dkt. 51-3.) Mr. Fortson proposes to reside in LaPorte, Indiana rather than his prior residency of Indianapolis, Indiana to remove himself from negative influences.

Pursuant to § 3142(g), the Court finds that Mr. Fortson does not presently pose a danger to any other person or the community if his sentence is reduced to time served and his term of supervised release is extended to three years with the first year of supervised release to be under conditions of home detention with GPS monitoring.

**C.     Section 3553(a) Factors**

In evaluating a motion for compassionate release, the next consideration is whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence. *United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020). In this case, they do not.

Section 3553(a) provides:

**(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
   **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

8

>    **(2)** the need for the sentence imposed—
>        **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>        **(B)** to afford adequate deterrence to criminal conduct;
>        **(C)** to protect the public from further crimes of the defendant; and
>        **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>    **(3)** the kinds of sentences available;
>    **(4)** the kinds of sentence[s] and the sentencing range established for--
>        **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>    **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>    **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>    **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature of Mr. Fortson's offense—possessing an AR-15 rifle for a friend as a prohibited person, while he was on probation—was reckless and illegal; however, because the rifle was unloaded and no bullets were located, the offense conduct is not so egregious. Mr. Fortson was sentenced to a term of 37 months, the minimum sentence under the advisory sentencing guideline range. He has been incarcerated for approximately 27 months of his 37 month sentence.

The stakes for Mr. Fortson's success are incredibly high. R.F. has lost his mother, and Mr. Fortson, as the surviving parent, has the moral responsibility and legal duty to provide the best care possible for R.F. Mr. Fortson's minor son is in need of his parenting because the present caretaker, a maternal cousin, is no longer able to care for R.F. Presently, further incarceration is not needed to deter Mr. Fortson from committing criminal offenses; nor, for the reasons described above, is it necessary to protect the public from future crimes. Mr. Fortson is at risk of permanently losing his parental rights if he remains incarcerated. That means that further incarceration would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2). In addition

to the 27 months served, Mr. Fortson will serve another 12 months under conditions of home detention with GPS monitoring. The sentence that has already been served plus the 3-year term of supervised release is adequate deterrence to future criminal conduct.

In addition, if released, Mr. Fortson will have more access to services that will enable him to be the father R.F. needs after the tragic loss of his mother. Mr. Fortson has participated in programs at FCI-Milan, but the COVID-19 pandemic has made further participation in programs within prison impossible.

For the foregoing reasons, the Court concludes that the applicable § 3553(a) factors support Mr. Fortson's request for compassionate release and the extension of his term of supervised release with additional conditions.

### III. CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Fortson's sentence, that Mr. Fortson does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that the reduction is consistent with the Sentencing Commission's policy statements. Therefore, the Court **GRANTS** Mr. Fortson's Motion for Compassionate Release, **ORDERS** that Mr. Fortson's sentence of imprisonment be reduced to **time served as of July 13, 2020,** and further **ORDERS** the BOP to release Mr. Fortson as soon as possible.

The **term of supervised release is extended from 2 years to 3 years**. The terms of supervised release imposed in the Judgment of December 12, 2018, remain the same with the addition of the following conditions:

The first year of Mr. Fortson's supervised release will be served **under conditions of home detention with GPS monitoring** with permission to leave his residence with his probation officer's approval.

Mr. Fortson is further **ORDERED** to comply with a 14 day period of quarantine due to the fact that he is leaving an institution in which persons have tested positive for the COVID-19 pandemic;  and as directed by medical staff and/or any state or local health authority.

**SO ORDERED.**

Date: 7/13/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mario Garcia
BRATTAIN & MINNIX
mario@bmgindy.com

Ronald Fortson, #16353-028
FEDERAL CORRECTIONAL INSTITUTION-MILAN
P.O. Box 1000
Milan, Michigan  48160

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE
pamela.domash@usdoj.gov

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE
jeffrey.preston@usdoj.gov

Robert Akers
UNITED STATES PROBATION OFFICE